AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
## for the
### Southern District of Florida

United States of America )
v. )
) Case No. 14-8026-WM
ROBERT JAY GOLDSTEIN )
)
)
_Defendant(s)_

FILED by _____ D.C.
JAN 31 2014
STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __12/13/2013 - 01/30/14__ in the county of __PALM BEACH__ in the __SOUTHERN__ District of __FLORIDA__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 USC Secs. 922(g)(1), 924(a)(2) | Possession of a Firearm and Ammunition by a Convicted Felon |

This criminal complaint is based on these facts:

PLEASE SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.

_____
_Complainant's signature_

Troy L. Raines, Task Force Officer, ATF
_Printed name and title_

Sworn to before me and signed in my presence.

Date: __01/31/2014__

_____
_Judge's signature_

City and state: __West Palm Beach, Florida__   William Matthewman, U.S. Magistrate Judge
_Printed name and title_

## AFFIDAVIT
### Case No. 13-8026-WM

Your affiant, Troy L. Raines, first being duly sworn, does hereby depose and state as follows:

1. Your affiant has been a police officer for over nineteen years. Your affiant was employed as a certified Police Officer from January 1994 to August 2001 with the Salisbury Police Department in Salisbury, MD. Since August 2001, your affiant has been employed as a certified Police Officer with the Boynton Beach Police Department in Boynton Beach, FL. During this tenure, your affiant has been involved in patrol operations, street crimes units, and Detective Bureau. Your affiant has been involved in several investigations involving violent crimes. Your affiant has been involved in the writing and execution of over fifty search and seizure warrants for narcotics, and other items related to violent crimes. I have been the affiant on search warrants pertaining to the illegal possession of firearms by convicted felons and other prohibited persons on approximately 20 prior occasions. Your affiant has received numerous hours of training in homicide investigations, narcotics investigations, street gang investigations, and investigative interviewing procedures. Since September 2006, your affiant has been assigned to the Palm Beach County Sheriff's/Violent Crimes Task Force/Gang Unit. Your affiant was deputized as a Task Force Officer with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) in December 2009. Your affiant's responsibilities include investigating violations of federal law, including violations of the Gun Control Act (Title 18 United States Code, Chapter 44). During my tenure as a law enforcement officer I have been personally involved in the investigation and prosecution of in excess of two hundred cases involving the unlawful possession of firearms and ammunition by previously convicted felons.

2. This affidavit is based upon your affiant's personal knowledge, review of reports, and information obtained from other law enforcement officials and civilians. This affidavit does not contain every fact about this case known to your affiant, but only enough facts to establish probable cause to charge Robert J. GOLDSTEIN for violation of Title 18, United States Code, Section 922 (g)(1), that is, the unlawful possession of a firearm and/or ammunition by a convicted felon.

3. On the basis of my review of records of the United States District Court for the Middle District of Florida, your affiant is aware that on April 7, 2003, Robert J. GOLDSTEIN pleaded guilty in Case No. 8:03-CR-00116-JSM that Court to Counts 1-3 of the Indictment charging him with violations of Title 18, United States Code, Section 241(f)(Conspiracy Against Rights of Citizens); Title 18, United States Code, Section 247 (f) (Damage To Religious Property/ Obstruction of Religious Belief); and, Title 26, United States Code, Section 5861 (d)(Unlawful Receipt of a Unregistered NFA Weapon), respectfully. Your affiant is aware that all of the foregoing offenses are classified as felonies under federal law. GOLDSTEIN was sentenced on June 19, 2003, to a term of 151 months' imprisonment as to Count 2, and 120 months' imprisonment as to Counts 1 and 3, to be served concurrently with one another, to be followed by a term of 36 months' Supervised Release. Based on the Federal Bureau of Prisons website, GOLDSTEIN was released from federal custody on August 9, 2013, and remains on federal supervised release.

4. On January 1, 2014, an employee of a Federally Licensed Firearms Dealer or "FFL," which is located in Jupiter, Florida, within Palm Beach County and the Southern District of Florida (hereinafter "the FFL"), brought to the attention of ATFE Industry Operations Investigator Sal Van Casteren an email received from Robert GOLDSTEIN. The email

contained an inquiry on potential purchases of black powder collectibles that are not defined as "firearms" pursuant to Title 18, United States Code, Section 921(a)(3), and thus are not illegal for convicted felons to possess under federal law. Contained in the email was an admission by GOLDSTEIN that he was incarcerated in a penitentiary in 2012. The email contained no other identifying characteristics for GOLDSTEIN except for his email address, rgoldstein66@gmail.com. In the email GOLDSTEIN refers to meeting the addressee in person at the FFL business.

5. On January 16, 2014, an ATF Special Agent assisting your affiant spoke with the FFL's employee who had contacted ATF IOI Casteren (hereinafter the "reporting employee"), and showed the employee a Florida Highway Safety and Motor Vehicle drivers license photo of Robert Jay GOLDSTEIN. The ATF Special Agent chose this photographed based upon the address listed on the driver's license abstract being the closest individual named Robert GOLDSTEIN in proximity to the FFL's business location. The reporting employee was asked if this person depicted in the photograph was the individual who came into the business and was associated with the email. The reporting employee responded "yes," identifying the photograph of GOLDSTEIN as the man who had come into the FFL, and mentioned that the subject (GOLDSTEIN) had also brought a hand gun in for repairs.

6. On January 24, 2014, your affiant interviewed the reporting employee in further detail about the firearm GOLDSTEIN had brought to the FFL for repair. The reporting employee stated that on or about December 13, 2013, GOLDSTEIN came to the business carrying a padded pistol case, stating that he wanted to have some maintenance done on a pistol. GOLDSTEIN provided the case to the FFL's personnel. Upon the case being opened, the reporting employee observed a Browning .25 caliber semi-automatic pistol disassembled inside

3

the carrying case. GOLDSTEIN stated that he wanted the pistol put back together. GOLDSTEIN was provided a service request form and asked him to complete it. GOLDSTEIN completed the form in his own handwriting and indicated his address as 3281 E. Mallory Blvd Jupiter, FL, which is located in Palm Beach County, Southern District of Florida. GOLDSTEIN described the pistol as a Baby Browning, 25 acp, SN# 468938, on the form. GOLDSTEIN then signed and dated the form. The reporting employee stated that the work was performed on the firearm and it was returned to GOLDSTEIN the next day (December 15, 2013). The reporting employee stated that when GOLDSTEIN came to pick up the firearm GOLDSTEIN inquired about purchasing some .25 caliber ammunition, and was advised that the FFL did not presently have that ammunition in stock, but that such was available on the internet. The reporting employee stated he/she was able to personally inspect the aforementioned Browning .25 caliber semi-automatic pistol, has over four years' experience in firearms' sales, and could verify that that the repaired firearm in GOLDSTEIN's possession was in fact a real and operational firearm.

7. On January 28, 2013, your affiant spoke with ATF Special Agent Booth (Tampa Field Division), who was the case agent for the previously mentioned federal case in the Middle District of Florida. SA Booth was able to provide information about the previous case. SA Booth stated that ATF received information from Pinellas County Sheriff's Office in reference to GOLDSTEIN having several firearms to include Class III, machineguns in his residence. During the investigation, several firearms/machineguns, bomb making materials, and hand written notes describing how to make, and detonate high order explosive devices were recovered from the defendant's possession. SA Booth stated that GOLDSTEIN had several handwritten ledgers and notebooks containing handwritten schematic diagrams on how to make destructive devices with remote detonators.

8. Your affiant is further aware, based on information received from GOLDSTEIN's supervising United States Probation Office (USPO), Heath Schur, that GOLDSTEIN is currently on Federal Supervised release and is prohibited from possessing a firearm as set forth in his conditions of release. USPO Schur stated that GOLDSTEIN had recently moved to the 3281 E. Mallory Blvd address, and that he (USPO Schur) personally met GOLDSTEIN and verified he was living at that address on January 22, 2014. USPO Schur advised he did not conduct a search of GOLDSTEIN's residence on that date, however. USPO Schur stated that during recent conversations with GOLDSTEIN that he (GOLDSTEIN) had inquired about how he could get some of the firearms that were seized in his federal case returned to him. USPO Schur stated that he informed GOLDSTEIN that he was prohibited from having any firearms or any access to firearms to include constructive possession of any firearms.

9. On January 29, 2013 your affiant presented an affidavit for a search warrant for 3281 E. Mallory Blvd based on the above investigation and the search warrant was signed by the Honorable Magistrate Judge Matthewman.

10. On January 30, 2013, ATF Special Agents and Task Force Officers executed the search warrant at 3281 E. Mallory Blvd., with assistance from the Jupiter Police Department. Agents conducted surveillance and observed GOLDSTEIN leave his residence, driving his Nissan Altima. Jupiter Police Department Officers assisted in conducting a traffic stop on GOLDSTEIN approximately one-quarter mile from his residence, and detained him. Your affiant met with GOLDSTEIN at the location of the traffic stop and advised him of the search warrant. Your affiant inquired with GOLDSTEIN about any officer safety issues that may be present at the residence prior to any agents entering the premises based on the known past experience of GOLDSTEIN. Once GOLDSTEIN quelled any fears of officer safety concern, he

was then transported to Jupiter Police Department. At this time, a search of the residence commenced pursuant to the search warrant.

11. During the search, agents were able to locate several items related to gun ownership to include books and periodicals related to firearms and manners of concealed carry of firearms, gun cleaning kits and other materials. While agents were conducting the search of the residence, Resident Agent in Charge (RAC) Shirley and Task Force Officer (TFO) Atkinson met with GOLDSTEIN's parents at their separate residence in Jupiter, Florida. RAC Shirley questioned the father, Donald Goldstein (hereinafter "Mr. Goldstein") about the Browning .25 caliber handgun. Mr. Goldstein stated that he owned a Browning .25 caliber handgun, and proceeded to show the agents where the firearm was located. When Mr. Goldstein located the bag or case in which he stored the Browning .25 automatic, he realized that the firearm was missing and spontaneously stated, "I can't believe he took it." Based on this statement, TFO Atkinson conducted a taped interview with the father for evidentiary value.

12. Contemporaneously, your affiant met with GOLDSTEIN at Jupiter Police Department and conducted an interview, which was audio and video recorded. ATF Special Agent Oxley was also present during the interview. Your affiant read GOLDSTEIN his *Miranda* Warnings, which GOLDSTEIN stated that he understood, and signed the rights card acknowledging that he understood his rights. At the beginning of the interview, your affiant began asking GOLDSTEIN about the incident that occurred at the FFL's store. GOLDSTEIN then stated, "I think that I want to have my attorney here." At this point, TFO Raines stopped asking questions and advised GOLDSTEIN of information that led to the investigation and that there was evidence that he had been to the FFL with a firearm. Also, just prior to the interview, TFO Raines received a message from RAC Shirley that GOLDSTEIN's father wanted to have a

message relayed to his son. The message was that if he (GOLDSTEIN) did not tell the agents where the gun was located that he (Mr. Goldstein) would never talk to him again. Based on the father's wishes, your affiant relayed the message to GOLDSTEIN. GOLDSTEIN then began to talk to your affiant and SA Oxley. Your affiant stopped GOLDSTEIN and advised him that based on his statement concerning an attorney, I would decline to speak to him or ask him questions about the case. Your affiant asked GOLDSTEIN if he remembered his rights and I asked him if he wanted me to read them to him again. GOLDSTEIN answered in the affirmative, and your affiant again advised GOLDSTEIN of his Constitutional rights per the *Miranda* warnings card. After reading the *Miranda* Rights to GOLDSTEIN again, GOLDSTEIN acknowledged that he understood and again stated, "I think I want my attorney here with me." At that time, I elected to conclude the interview and advised GOLDSTEIN of such, and that I was going to arrange for him to be transported to the county jail, and both your affiant and SA Oxley left the interview room and walked out into the vestibule area. The interview room is a normal sized room with an automatic closing wooden door. After about one to two minutes, GOLDSTEIN opened the door to the interview room, and stated to your affiant and SA Oxley that he had changed his mind and that he wanted to talk. Your affiant and SA Oxley reentered the interview room, and I explained to GOLDSTEIN that I understood that he had took it upon himself to reestablish contact with us and that he wanted to talk to us without an attorney present. GOLDSTEIN stated that he wanted to get it all out and tell his side of the story. Your affiant also explained to GOLDSTEIN that I did not want him to consider the message that was passed on from his father in any way a trick or coercion to get him to talk. GOLDSTEIN acknowledged this and again stated that he wanted to tell his story.

13. During the interview, GOLDSTEIN admitted to taking his father's Browning .25

7

caliber handgun. GOLDSTEIN advised that the firearm was located inside his residence and that he had it hidden underneath the upstairs hallway bathroom sink cabinet. Based on this, I notified the agents conducting the search of the residence as to the location of the firearm. A few minutes later, I was informed by the agents that the firearm had been recovered. Also during the interview, GOLDSTEIN stated that he took the firearm to the FFL to have it worked on, and stated that he did fill out the service request form and signed it. GOLDSTEIN stated that he took his father's firearm because he felt unprotected since he was released from prison and wanted to have the firearm for protection. After the interview GOLDSTEIN was transported to the Palm Beach County Jail and booked in on a federal rough arrest.

14. Your affiant then met with agents at the West Palm Beach ATF office and reviewed the evidence removed from the residence. The firearm that was recovered from the location described by GOLDSTEIN is a Fabrique Nationale (Browning patent .25 caliber semi-automatic) pistol. The pistol was the same one described by GOLDSTEIN on the service request and shared the same serial number (468958) listed by GOLDSTEIN on the service request form he submitted to the Jupiter FFL. The firearm was found by agents hidden in an area under the sink and positioned behind a piece of cardboard that was taped around the firearm. The firearm was discovered inside a brown holster type pouch that had a closure flap. The firearm was photographed in place before being recovered by the agents. The firearm was loaded with five live rounds of Remington .25 caliber ammunition.

15. Your affiant is aware based upon an interview with ATF Interstate Commerce Nexus expert Resident Agent In Charge Robert Shirley, who has been deemed qualified as an expert in the interstate commerce nexus of firearms and ammunition in the United States District Court for the Southern District of Florida, and elsewhere, on numerous prior occasions, that

8

Browning and Fabrique Nationale ("FN") .25 caliber semi-automatic pistols, and Remington .25 caliber ammunition, were/are manufactured outside the State of Florida, and that by virtue of said pistol and ammunition's presence in the State of Florida, that such must, of necessity, have traveled in and affected interstate and/or foreign commerce.

16. WHEREFORE, on the basis of the foregoing facts, your affiant respectfully submits that probable cause exists to charge Robert J. GOLDSTEIN with having illegally possessed a firearm and ammunition which had traveled in and affected interstate and/or foreign commerce, having previously been convicted of a crime punishable by a term of imprisonment exceeding one year, in violation of Title 18, United States Code, Section 922(g)(1) and 924(a)(2).

FURTHER YOUR AFFIANT SAYETH NAUGHT.

_____
TROY L. RAINES
TASK FORCE OFFICER
BUREAU OF ALCOHOL,
TOBACCO, FIREARMS
AND EXPLOSIVES

SWORN TO AND SUBSCRIBED BEFORE
ME THIS 31th DAY OF JANUARY, 2014,
AT WEST PALM BEACH, FLORIDA.

_____
WILLIAM MATTHEWMAN
UNITED STATE MAGISTRATE JUDGE

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NUMBER: 14-8026-WM

## BOND RECOMMENDATION

DEFENDANT: ROBERT J. GOLDSTEIN

　　　　　PRETRIAL DETENTION is recommended
　　　　　(Personal Surety) (Corporate Surety) (Cash) (Pre-Trial Detention)

By: _____
　　AUSA:   JOHN C. McMILLAN

Last Known Address: _____

What Facility: _____

Agent(s): **ATF TFO TROY RAINES**
　　　　　(FBI)   (SECRET SERVICE)   (DEA)   (IRS)   (ICE)   (**OTHER**)

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# PENALTY SHEET

Defendant's Name: __ROBERT JAY GOLDSTEIN__

Case No.: __14-8026-WM__

**Count # 1**

Felon in Possession of Firearms
Title 18, United States Code, Sections 922(g)(1), 924(a)(2)

**Max. Penalty**: 0-10 years' imprisonment; $250,000 fine; 0-3 years' supervised release: and, a $100.00 special assessment.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 14-8026-WM

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

ROBERT JAY GOLDSTEIN,

        Defendant.
_____/

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the United States Attorney's Northern Region prior to October 14, 2003?   _____ Yes   __X__ No

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to September 1, 2007?   _____ Yes   __X__ No

        Respectfully submitted,

        WILFREDO A. FERRER
        UNITED STATES ATTORNEY

BY: _____
        JOHN C. McMILLAN, JR.
        ASSISTANT UNITED STATES ATTORNEY
        Admin. No. A5500228
        500 S. Australian Ave., Suite 400
        West Palm Beach, FL 33401
        Office:  (561) 820-8711
        FAX:    (561) 820-8777
        John.mcmillan@usdoj.gov